DELBELLO DONNELLAN WEINGARTEN
WISE & WIEDERKEHR, LLP
*Attorneys for the Debtors*
One North Lexington Avenue
White Plains, New York 10601
(914) 681-0200
Jonathan S. Pasternak, Esq.
Erica Feynman Aisner, Esq.


UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X
In re:

IMAGIMED LLC, et al.[1]                                    Chapter 11
                                                           Lead Case No. 14-22415 (RDD)
                                        Debtors.           Jointly Administered
---------------------------------------------------------X

## DEBTORS' FIRST AMENDED JOINT PLAN OF REORGANIZATION

Imagimed LLC, together with all of its debtor-affiliates (collectively, the "Debtors"),

hereby proposes the following First Amended Joint Chapter 11 Plan of Reorganization (the

"Plan") pursuant to the provisions of Chapter 11 of the Bankruptcy Code.

## ARTICLE I
## DEFINITIONS

For the purposes of this Plan, and the Disclosure Statement simultaneously filed by the

Debtors, the following terms shall have the respective meanings set forth below (such meanings

to be equally applicable to the singular and plural forms of the terms defined, unless the context

otherwise requires). Any term used herein which is not otherwise defined herein, but is defined

in the Bankruptcy Code or Bankruptcy Rules, shall have the meaning ascribe to that term in the

Bankruptcy Code or Bankruptcy Rules:

---

[1] Debtors include: Imagimed, LLC - 02-0655880; Open MRI of Brewster, LLC – 02-0701774; Open MRI of
DeWitt, LLC – 16-1596886; Open MRI of Fishkill LLC – 14-1827538; Open MRI of Middletown, LLC – 43-
1868398, Open MRI of Tarrytown LLC – 57-1154134; Open MRI of Williamsport, LLC – 23-3091979; Open MRI
of Yorktown LLC – 13-3973385.

1.1     "**Administrative Claims**" shall mean a Claim for any cost or expense of administration (including Professional Claims) of the Chapter 11 Case asserted or arising under sections 503, 507(a)(2) or 507(b) of the Bankruptcy Code, including any (i) actual and necessary cost or expense of preserving the Debtors' Estates or operating the business of the Debtors arising on or after the Petition Date, (ii) payment to be made under this Plan to cure a default on an executory contract or unexpired lease that is assumed pursuant to section 365 of the Bankruptcy Code, (iii) obligations validly incurred or assumed by the Debtors in the ordinary course of business arising on or after the Petition Date, (iv) compensation or reimbursement of expenses of Professionals arising on or after the Petition Date, to the extent allowed by the Bankruptcy Court under section 330(a) or section 331 of the Bankruptcy Code, and (v) fees or charges of the Debtors' Estates under section 1930 of title 28 of the United States Code.

1.2     "**Allowed Claim**" shall mean a Claim against any of the Debtors or any portion thereof (i) arising on or before the Effective Date as to which a proof of claim has been filed and (a) no objection to allowance has been timely interposed, or (b) an objection has been adjudicated by a Final Order to the extent such objection is determined in favor of the relevant holder, (ii) any Claim as to which the liability of any Debtor and the amount thereof are determined by a Final Order of a court of competent jurisdiction other than the Bankruptcy Court, (iii) any Claim that is expressly allowed by a provision of the Plan, or (iv) any Claim that has been scheduled by the Debtors in the Schedules filed with the Bankruptcy Court pursuant to Rule 1007(b) of the Bankruptcy Rules to the extent and in the amount such Claim is scheduled as liquidated and undisputed.

1.3     "**Assumed Contracts**" shall mean the contracts and agreements on Schedule A

2

hereto which shall be assumed by the Debtors pursuant to order of the Bankruptcy Court as of the Effective Date.

1.4    "**Avoidance Action**" shall mean any actual or potential claim to avoid a transfer of an interest in property or an obligation incurred by the Debtors pursuant to any applicable section of the Bankruptcy Code, including all claims under Chapter 5 of the Bankruptcy Code.

1.5    "**Bankruptcy Code**" shall mean Title 11 of the United States Code, as in effect on the Petition Date and as thereafter amended, as applicable in the chapter 11 cases.

1.6    "**Bankruptcy Court**" shall mean the United States Bankruptcy Court for the Southern District of New York.

1.7    "**Bankruptcy Rules**" shall mean the Federal Rules of Bankruptcy Procedure and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Southern District of New York, as in effect on the Petition Date and as thereafter amended, as applicable from time to time in the chapter 11 case.

1.8    "**Cash**" shall mean legal tender of the United States of America or cash equivalents.

1.9    "**Claim**" is as defined in section 101(5) of the Bankruptcy Code, and shall also include, without limitation, Administrative Claims, any claims of whatsoever type or description, asserted or unasserted, known or unknown, liquidated or unliquidated, in law or equity, against the Debtors, any claim for pre-Petition Date interest, post-Petition Date interest or contingent interest, any claim arising out of the rejection of executory contracts, any claim arising from the recovery of property under sections 550 and 553 of the Bankruptcy Code and any claim that does not arise until after the commencement of the chapter 11 cases for a tax entitled to priority under

3

section 507(a) of the Bankruptcy Code.

      1.10    "**Confirmation Date**" shall mean the date upon which the Confirmation Order is entered by the Bankruptcy Court.

      1.11    "**Confirmation Order**" shall mean the order of the Bankruptcy Court pursuant to section 1129 of the Bankruptcy Code confirming the Plan.

      1.12    "**Cure Amounts**" shall mean the respective amounts which the Debtor and Plan Funder have agreed shall be paid to parties with Assumed Contracts or "cure" under section 365 of the Bankruptcy Code, which amounts shall be paid from the Plan Distribution Fund on the Effective Date.

      1.13    "**Debtors**" shall mean, collectively, Imagimed, LLC, Open MRI of Brewster, LLC, Open MRI of DeWitt LLC, Open MRI of Fishkill LLC, OPEN MRI of Middletown, LLC, Open MRI of Tarrytown LLC, Open MRI of Williamsport LLC and Open MRI of Yorktown LLC, and any predecessor or successor or assign of the foregoing.

      1.14    "**Disputed Claim**" shall mean any Claim, to the extent it is neither Allowed nor disallowed under the Plan or a Final Order, or for which a proof of claim has been timely filed with the Bankruptcy Court or a written request for payment has been made, to the extent the Debtors or any party in interest have interposed a timely objection, which objection has not been withdrawn or determined by a Final Order.

4

1.15    "**Effective Date**" shall mean a date selected by the Debtors with the consent of the Plan Funder that is not more than five (5) days after the later of the first date on which all conditions to the Effective Date as set forth in Section 8.02 of the Plan have been satisfied or waived, the Plan Distribution Fund has been paid to the Debtors, and the date upon which the Confirmation Order becomes a Final Order.

1.16    "**Exculpated Parties**" shall mean each of the Debtors and the Plan Funder and any of such parties' respective members, officers, directors, affiliates, employees, representatives, advisors, attorneys, financial advisors, or agents.

1.17    "**Final Order**" shall mean an order or judgment which has not been stayed and as to which order or judgment the time to appeal or seek review or rehearing has expired and as to which no appeal, petition for review or rehearing is pending.

1.18    "**Interests**" shall mean the equity and or membership interests of the members in the Debtors and the rights associated therewith.

1.19    "**New Members**" shall mean the members of the Reorganized Debtors on and after the Effective Date.

1.20    "**New Organization Documents**" shall mean the amended and restated LLC and operating agreements of the Reorganized Debtors.

1.21    "**Petition Date**" shall mean April 1, 2014.

1.22    "**Plan**" shall mean this Joint Chapter 11 Plan of Reorganization and any amendments hereto or modifications hereof made in accordance with the provisions of the Bankruptcy Code and with the consent of the Plan Funder.

1.23    "**Plan Distribution Fund**" shall mean the Cash provided by the Plan Funder to fund the Plan, in the amount of $500,000.

5

1.24    **"Plan Funder"** shall mean 2020 Advanced Diagnostic Imaging LLC.

1.25    **"Priority Claim"** shall mean a Claim, other than an Administrative Claim, that is entitled to priority under section 507 of the Bankruptcy Code.

1.26    **"Priority Non-Tax Claim"** shall mean any Claim of any Creditor entitled to priority in payment as specified in section 507(a)(4), (5), (6) or (7) of the Bankruptcy Code.

1.27    **"Priority Tax Claim"** shall mean any Claim of any governmental unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

1.28    **"Pro Rata"** shall mean proportionally according to the total amount of Allowed Claims or Allowed Equity Interests in a particular Class.

1.29    **"Professionals"** shall mean shall mean those persons: (a) retained by the Debtors pursuant to an order of the Bankruptcy Court in accordance with section 327 and 1103 of the Bankruptcy Code providing for compensation for services rendered prior to the Effective Date pursuant to sections 327, 328, 329, 330 and 331 of the Bankruptcy Code; or (b) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to sections 503(b)(2) and (4) of the Bankruptcy Code.

1.30    **"Rejected Contracts"** shall mean all contracts and agreements which are not expressly designated for assumption by the Debtors as of the Effective Date.

1.31    **"Reorganized Debtors"** shall mean the Debtors, or any successors thereto, by merger, consolidation, or otherwise, on or after the Effective Date.

1.32    **"Secured Claim"** shall mean a Claim that is secured by a lien on property of the Debtors' estates in accordance with section 506(a) of the Bankruptcy Code.

1.33    **"Schedules"** shall mean the schedules of assets and liabilities and the statement of

financial affairs filed by the Debtors as required by section 521 of the Bankruptcy Code and
Bankruptcy Rule 1007, and all amendments thereto.

1.34    **"Taxes"** shall mean all income, gaming, franchise, excise, sales, use,
employment, withholding, property, payroll or other taxes, assessments, or governmental
charges, together with any interest, penalties, additions to tax, fines, and similar amounts
relating thereto, imposed or collected by any federal, state, local or foreign governmental unit on
or from the Debtors.

1.35    **"Unsecured Claim"** shall mean any Claim that is not an Administrative Claim,
Priority Claim or Secured Claim, including, without limitation, Claims based upon pre-Petition
Date trade accounts payable or Claims based upon the rejection of an executory contract during
the pendency of the chapter 11 cases.

## ARTICLE II
## DESIGNATION OF CLAIMS AND INTERESTS

All holders of Claims and Interests against the Debtors, of whatever nature, whether or
not scheduled or liquidated, absolute or contingent, whether Allowed or not, shall be bound by
the provisions of the Plan and are hereby classified as follows:

**Class 1:** shall consist of all Allowed Priority Claims other than Allowed Priority Tax
Claims

**Class 2:** shall consist of the Allowed Secured Claims of M&T Bank.

**Class 3:** shall consist of all Allowed Non-Priority Unsecured Claims.

**Class 4:** shall consist of all Allowed Interests in the Debtors.

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims
and Priority Tax Claims have not been classified and thus are excluded from the foregoing

7

Classes.

## ARTICLE III
## TREATMENT OF CLAIMS UNDER THE PLAN

Section 3.01    **Satisfaction of Claims.**  The treatment of and consideration to be received by holders of Allowed Claims shall be limited to payments made by the Debtors pursuant to the Plan from the Plan Distribution Fund and shall be in full satisfaction, release and discharge of their respective Claims against the Debtors. Unless specifically assumed by the Reorganized Debtors, the Reorganized Debtors shall have no liability to any creditors or any obligation to pay any Claims of creditors of the Debtors.

a)    <u>Allowed Administrative Claims other than Claims of Professionals:</u>  These Allowed Claims shall be paid in the ordinary course by the Debtors from the Debtors' operations and according to the terms and conditions of the respective contracts with respect to those Claims. The Reorganized Debtors shall not be responsible for the payment of any such Claims.

b)    <u>Allowed Claims of Professionals</u>: Allowed Administrative Claims of Professionals shall be paid in full, in Cash, solely from the Plan Distribution Fund, upon the later of (i) allowance by the Court pursuant to section 330 of the Bankruptcy Code or (ii) the Effective Date. The Reorganized Debtors shall not be responsible for the payment of any such Claims.

c)    <u>United States Trustee's Fees</u>: Under the Plan, all United States Trustee statutory fees arising under 28 U.S.C. § 1930 and 31 U.S.C. § 3717 shall be paid in full, in Cash, in such amount as they are incurred in the ordinary course of business by the Debtors from the Debtors operations and/or from the Plan Distribution Fund. The Reorganized Debtors shall be responsible for the payment of United States Trustee quarterly fees through the entry of a final decree closing the Debtors' Chapter 11 cases.

8

d)        <u>Allowed Administrative and Priority Tax Claims</u>:  Allowed Administrative Claims (if any) shall be paid by the Debtors in full, in Cash, from the Plan Distribution Fund on or as soon as practical after the Effective Date. All Priority Tax Claims shall be paid in full, in Cash, from the Plan Distribution Fund. The Reorganized Debtors shall not be responsible for the payment of any such Claims.

Section 3.02    **Class 1:**  The holders of Allowed Class 1 Priority Claims, other than Allowed Priority Tax Claims, if any, shall be paid in full, in Cash, solely from the Plan Distribution Fund, on or as soon as practical after the Effective Date. The Reorganized Debtors shall not be responsible for the payment of any such Claims. The Allowed Class 1 Claims are unimpaired and are deemed to accept the Plan.

Section 3.03    **Class 2:**  The holder of the Allowed Class 2 Secured Claim shall receive no distribution under the Plan, as the Class 2 Claim has been paid in full during the pendency of the Chapter 11 cases. Any liens and security interests on the Debtors' property securing the Class 2 Claim shall be deemed released, satisfied and extinguished on the Effective Date, and the Debtors shall be authorized to file all such documents necessary to extinguish such liens and vest such property in the Reorganized Debtors free and clear of all Class 2 Secured Claims, liens, and security interests. Class 2 is unimpaired under the Plan and is deemed to accept the Plan.

Section 3.04    **Class 3**:  Holders of Allowed Class 3 Unsecured Claims shall each receive, in Cash, a Pro Rata Cash distribution of the remaining funds from the Plan Distribution Fund after payment of all Allowed Administrative Claims, including Allowed Administrative Claims of Professionals and United States Trustee's fees, Allowed Priority Claims, Allowed cure Claims with respect to any leases or executory contracts being assumed under the Plan on the Effective Date or as soon as is practicable thereafter. Allowed Class 3 Claims are impaired under

9

the Plan. Holders of such Claims shall be entitled to vote to accept or reject the Plan.

Section 3.05    **Class 4:**  Allowed Class 4 Interests shall be canceled upon the Effective Date and one hundred (100%) percent of the interests in the Reorganized Debtors shall be issued to the Plan Funder in consideration for funding the Plan in the amount of the Plan Distribution Fund. The holders of the Class 4 Interests are impaired under this Plan and are deemed to reject the Plan, as they are receiving no distribution under the Plan.

Section 3.06    **Acceptance by Impaired Class of Claims.**  Class 3 shall have accepted the Plan if (i) the holders of at least two-thirds in dollar amount of the Allowed Claims actually voting in such Class have voted to accept the Plan and (ii) more than one-half in number of the holders of such Allowed Claims actually voting have voted to accept the Plan.

Section 3.07    **Presumed Acceptance of the Plan**.  Under section 1124 of the Bankruptcy Code, Classes 1 and 2 are deemed unimpaired under the Plan, and, therefore, are deemed to accept the Plan under section 1126(f) of the Bankruptcy Code.

Section 3.08    **Post-Confirmation Income Not Subject to Distribution**. Any receivables, proceeds of the disposition of assets, or other property vested in or received by the Reorganized Debtors after the Effective Date shall be, and remain, the sole property of the Reorganized Debtors and shall not be subject to any Claims or constitute any part of the Plan Distribution Fund, which shall be the sole source of payments to unclassified Claims and Classes 1 and 3 under the Plan.

## ARTICLE IV
## MEANS FOR EXECUTION

Section 4.01    **Distributions of Cash**.  Except as otherwise provided in the Plan, including without limitation Article VIII of the Plan, the Cash required to be first distributed to holders of Allowed Claims under the Plan shall be distributed by the Debtors within ten (10)

days after the Effective Date, except to the extent that a Disputed Claim becomes an Allowed

Claim after the Effective Date, in which case such Cash shall be distributed within ten (10) days

after the order allowing such Claim becomes a Final Order.

Section 4.02    Means for Implementation.

a)    **Plan Funding**: The Plan shall be funded by the Plan Funder who shall, subject to

the terms hereof, pay to the Debtors the Plan Distribution Fund in the amount of $500,000.

Prior to the hearing to consider Confirmation of this Plan, the Plan Funder shall deposit the Plan

Distribution Fund into escrow with its attorneys. Upon the occurrence of the Effective Date and

satisfaction of the conditions precedent set forth in Article VIII hereof,  the Plan Distribution

Fund shall be released to the Debtors for the purpose of making distributions pursuant to the

Plan.

b)    **Issuance of New Membership Interests**:  Upon the release of the Plan

Distribution Fund to the Debtors: (i) all authorized or issued Interests of the Debtors shall be

cancelled and extinguished and the holders thereof shall not retain any rights thereunder and

such instruments shall evidence no rights or Interests in the Debtors or the Reorganized

Debtors; and (ii) 100% of the membership interests in the Reorganized Debtors will be

deemed immediately and contemporaneously issued to the Plan Funder, and the Debtors and

Reorganized Debtors shall have the authority and be directed to issue such documentation as the

Plan Funder deems necessary to effectuate such issuance.

c)    **Continuation of Automatic Stay**. In furtherance of the implementation of the

Plan, except as otherwise provided herein, all injunctions or stays provided for in the

chapter 11 cases pursuant to sections 105 or 362 of the Bankruptcy Code, or otherwise, and

in existence on the Confirmation Date, shall remain in full force and effect and apply to all

holders of Claims against, or Interests in, the Debtors and the estates until the Effective Date;

provided, however, that nothing herein shall be deemed to extend the scope of any such

injunction or stay beyond the provisions of section 362 of the Bankruptcy Code.

d)      **Corporate Action.** On the Effective Date, all matters provided for under the

Plan that would otherwise require approval of the members of the Debtors or the Reorganized

Debtors or their successors in interest under the Plan, including, the authorization to issue or

cause to be issued new Interests and documents relating thereto and the adoption of the New

Organization Documents, shall be deemed to have occurred and shall be in full force and effect

from and after the Effective Date without any requirement of further action by the members of the

Debtors or the Reorganized Debtors.

e)      **Avoidance Actions.** As of and subject to the occurrence of the Effective Date,

the Debtors will waive and release any causes of action under sections 544, 547, 548, 550, 551

and 553 of the Bankruptcy Code, except that such waiver shall not extend to any defense

asserted by the Debtors pursuant to section 502(d) of the Bankruptcy Code to a Claim.

12

## EXECUTORY CONTRACTS

Section 5.01    **Assumption, Assignment and Rejection of Contracts and Leases.** Except as otherwise provided herein, as of the Effective Date, the respective Debtors shall be deemed to have assumed each executory contract and unexpired lease to which it is a party, to the extent such executory contract or unexpired lease is identified on Schedule A hereof, including with respect to cure amounts scheduled thereon. Any executory contract or unexpired lease of the Debtors not identified in Schedule A hereto and not previously assumed or rejected, shall be deemed rejected. Unless otherwise specified, each executory contract and unexpired lease to be assumed shall include any and all modifications, amendments, supplements, restatements or other agreements made directly or indirectly by any agreement, instrument or other document that in any manner affects such executory contract or unexpired lease, without regard to whether such agreement, instrument or other document is listed on Schedule A, except that no executory contract or unexpired lease identified on Schedule A or hereafter added to Schedule A in accordance with the terms hereof may be modified, amended, supplemented, or restated between the date hereof and the Effective Date, or be binding upon the Reorganized Debtors, without the prior written consent of the Plan Funder. Nothing in the terms of this Plan shall constitute an admission by any Debtor that a contract or lease is an executory contract or unexpired lease or that any Debtor or its successors and assigns has any liability thereunder. The Confirmation Order shall constitute an order of the Bankruptcy Court pursuant to section 365 of the Bankruptcy Code approving all such assumptions and rejections described in e) of the Plan as of the Effective Date.

13

Section 5.02  **Amendments to Schedule A: Rejected Executory Contracts and Unexpired Leases.** Except as provided in Section 5.03 below, the Debtors reserve the right, with the consent of the Plan Funder, to amend Schedule A to the Plan not later than fourteen (14) days prior to the Confirmation Hearing, either to: (i) delete any executory contract or lease listed therein and provide for its rejection; or (ii) add any executory contract or lease to Schedule A, thus providing for its assumption. The Debtors shall provide notice of any such amendment of Schedule A to (i) the parties to the executory contract or lease affected thereby and (ii) the Plan Funder not later than fourteen (14) days prior to the Confirmation Hearing.

Section 5.03  **Cure Payments; Adequate Assurance of Performance.** Any monetary defaults under each executory contract or unexpired lease to be assumed under the Plan shall be satisfied from the Plan Distribution Fund pursuant to section 365(b)(1) of the Bankruptcy Code, in either of the following ways: (i) by payment of the cure amount in Cash, in full on the Effective Date; or (ii) by payment of the cure amount on such other terms as may be agreed to by the Debtor, the Plan Funder, and the non-Debtor parties to such executory contract or unexpired lease. In the event of a dispute regarding (i) the amount or timing of any cure payments, (ii) the ability of the Debtors and the Plan Funder to provide adequate assurance of future performance under the contract or lease to be assumed, or (iii) any other matter pertaining to assumption of the contract or lease to be assumed, an objection must be filed and served within the same deadline and in the same manner established for the filing and service of objections to Confirmation of the Plan (or, in the case of additions to Schedule A, 14 days after service of notice of such addition), and the Debtors shall pay all required amounts promptly following the later of the entry of a Final Order resolving the dispute or the Effective

14

Date; provided, however, notwithstanding any other provision of this Plan, (i) with the written

agreement of the counterparty to an executory contract or unexpired lease or (ii) upon written

notice to the counterparty, in each case with the consent of the Plan Funder, the Debtors or

the Reorganized Debtors may remove any executory contract or lease to the list of assumed

and assigned contracts if the Debtors, Reorganized Debtors or the Plan Funder determine, in

either of their discretion, that it is not in either of their best interests to assume the executory

contract or unexpired lease considering the cure amount or any other terms of assumption as

determined by the Bankruptcy Court in a Final Order. Failure to timely assert an objection to

(i) the amount or timing of any cure payments, (ii) the ability of the Debtors and the Plan

Funder to provide adequate assurance of future performance under the contract or lease to be

assumed and assigned, or (iii) any other matter pertaining to assumption of the contract or

lease to be assumed and vested shall constitute consent to the proposed assumption and vesting

in the Reorganized Debtors, and cure on the terms and conditions set forth in Schedule A and

herein, including an acknowledgement that the proposed assumption and assignment provides

adequate assurance of future performance and that any amounts identified for "cure" is the

amount necessary to cure any and all outstanding defaults under the executory contract or

unexpired lease to be assumed and assigned, as well as an acknowledgement and agreement that

no other defaults exist under such contract or lease. Notwithstanding any other provision of

the Plan, (i) with the written agreement of the counterparty to an executory contract or

unexpired lease or (ii) upon written notice to the counterparty, the Debtors or the

Reorganized Debtors may provide for its assumption and assignment if the Debtors and Plan

Funder determine, in their sole discretion, that it is not in its best interests to reject the

executory contract or unexpired lease considering the potential rejection damages Claim or

15

any other terms of rejection as determined by the Bankruptcy Court in a Final Order.

Section 5.04  **Rejection Damage Claims**. Any rejection damage Claim must be filed at least fourteen (14) days before the hearing to consider confirmation of the Plan and shall be asserted only against the applicable Debtor. Any timely filed rejection damage Claim will be treated as a Class 3 Unsecured Claim to the extent it is Allowed and shall be payable exclusively from the Plan Distribution Fund. Any rejection damage Claim that is not filed prior to the rejection damage Claim Bar Date shall be forever barred from assertion against the Debtors, their estates, the Plan Funder, or the Reorganized Debtors or their property, and the holder of such rejection damage Claim shall be conclusively deemed to (i) have waived such rejection damage Claim and (ii) release the Debtors, the Plan Funder, and the Reorganized Debtors with respect thereto.

## ARTICLE VI
## GENERAL AND MISCELLANEOUS PROVISIONS

Section 6.01  **Modification of the Plan**.  The Debtors reserve the right to amend or modify the Plan in accordance with section 1127 of the Bankruptcy Code.

Section 6.02  **Article and Section References.** Unless otherwise specified, all section, article and exhibit references in the Plan are to the respective section in, article of, or exhibit to the Plan.  The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions of the Plan. Words denoting the singular number shall include the plural number and vice versa, and words denoting one gender shall include the other gender.

Section 6.03  **Payment Dates.** If any payment or act under the Plan is required to be made or falls on a date which shall be a Saturday, Sunday or a legal holiday, the making of such payment or performance of such act may be completed on the next succeeding business day, and

16

shall be deemed to have been completed timely. Any payment required under the Plan shall be deemed to have been paid on the date when such payment is mailed.

Section 6.04    **Notices.** Any notices to be forwarded under the Plan shall be in writing and sent by certified mail, return receipt requested, postage pre-paid, or by overnight mail or hand delivery, addressed as follows:

If to the Debtors:                                   If to Plan Funder or Reorganized Debtors:

IMAGIMED, LLC                                  TEITELBAUM LAW GROUP, LLC
19847 Century Blvd. Suite D                  One Barker Avenue, 3rd Floor
Germantown, MD 20874                        White Plains, New York 10601
Attn: Scott Buchanan                            Attn: Jay Teitelbaum, Esq.

with a copy to:

DELBELLO DONNELLAN WEINGARTEN
WISE & WIEDERKEHR, LLP
One N. Lexington Avenue
White Plains, New York 10601
Attn:    Jonathan S. Pasternak, Esq.
           Erica R. Aisner, Esq.


The Debtors may designate in writing any other address for purposes of this section, which designation shall be effective upon receipt.

17

Section 6.05   **Enforceability.** Should any provision in the Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability or operative effect of any and all other provisions of the Plan.

Section 6.06   **Applicable Law.** Except to the extent that the Bankruptcy Code is applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the internal laws of the State of New York, except to the extent that other provisions of Federal law are applicable.

Section 6.07   **Successors and Assigns.** The rights and obligations of any entity named or referred to in the Plan shall be binding upon and inure to the benefit of the successors and assigns of such entity.

Section 6.08   **Reservation of Rights.** Neither the filing of the Plan, nor any statement or provision contained herein, shall be or be deemed to be an admission against interest. If the Effective Date does not occur, neither this Plan nor any statement contained herein may be used or relied upon in any manner in any suit, action, proceeding or controversy within or outside of the Chapter 11 cases.

Section 6.09   **U.S. Trustee Fees and Post Confirmation Reports.** The Debtors shall be solely responsible for filing post-Confirmation Date reports with the Bankruptcy Court, and shall pay all quarterly fees required under 28 U.S.C. § 1930, and applicable interest under 31 U.S.C. § 3717, until the earlier of (a) conversion or dismissal of these chapter 11 cases or (b) entry of a final decree closing these chapter 11 cases.

**ARTICLE VII**
**RESOLUTION OF DISPUTED CLAIMS & RESERVES**

Section 7.01    **Objections**.  An objection to either the allowance of a Claim or an

amendment to the Debtors' Schedules shall be in writing and may either be filed with the

Bankruptcy Court or pursued and resolved by other means by the Debtors at any time on or

before thirty (30) days after the Effective Date, subject to an extension of such deadline by the

Bankruptcy Court, for cause.

Section 7.02    **Amendment of Claims**.  A Claim may be amended after the Confirmation

Date only as agreed upon by the Debtors and the holder of such Claim and as approved by the

Bankruptcy Court or as otherwise permitted by the Bankruptcy Code and Bankruptcy Rules.

Section 7.03    **Reserve for Disputed Claims**.  The Debtors shall reserve, in a separate

account, held in trust for distribution pursuant to this section, on account of each holder of a

Disputed Claim, in Cash, from the Plan Distribution Fund the amount that would otherwise be

distributable on such date and thereafter to such holder were such Disputed Claim an Allowed

Claim on the Effective Date. The Cash so reserved for the holder of such Disputed Claim shall

be distributed without any accrued interest thereon as provided in Section 4.1 hereof after such

Disputed Claim becomes an Allowed Claim, in the amount allocable under Sections 3.1–3.4

hereof to such Allowed Claim.  Any amounts not allocable to such Allowed Claim shall be

reallocated, Pro Rata, to Class 3 claimholders.

**ARTICLE VIII**
**CONDITIONS PRECEDENT**

Section 8.01    **Conditions to Confirmation.** The following is a condition to entry of the

Confirmation Order: the Confirmation Order shall be in form and substance reasonably

satisfactory to the Debtors and the Plan Funder.

19

Section 8.02    **Conditions to the Effective Date.** The Plan shall not become effective and the Effective Date shall not occur unless and until:

a)        the Bankruptcy Court shall have entered the Confirmation Order, in form and substance reasonably satisfactory to the Debtors and the Plan Funder;

b)        all documents, instruments and agreements provided for under this Plan or necessary to implement this Plan shall be in form and substance reasonably satisfactory to the Debtors and the Plan Funder and have been executed and delivered by the parties thereto, unless such execution or delivery has been waived by the parties benefited thereby;

c)        the Plan Distribution Fund shall be fully funded and made available to the Debtors; and

d)        the Confirmation Order shall be a Final Order.

Section 8.03    **Waiver of Conditions Precedent**. Each of the conditions precedent in Sections 8.01 and 8.02 of the Plan may be waived, in whole or in part, by the Debtors with the consent of the Plan Funder without notice or order of the Bankruptcy Court.

Section 8.04    **Termination of Plan for Failure To Become Effective.** If the Effective Date shall not have occurred on or prior to the date that is sixty (60) days after the Confirmation Date, then this Plan shall terminate and be of no further force or effect unless the provisions of this Section are waived in writing by the Debtors and the Plan Funders.

Section 8.05    **Notice of Effective Date.** On the Effective Date, or as soon thereafter as is reasonably practicable, the Debtors shall file with the Bankruptcy Court a "Notice of Effective Date" in a form reasonably acceptable to the Debtors in their sole discretion, which notice shall constitute appropriate and adequate notice that this Plan has become effective. A courtesy copy of the Notice of Effective Date may, but is not required to, be sent

20

by first class mail, postage prepaid (or at the Company's option, by courier or facsimile) to

those Persons who have filed with the Bankruptcy Court requests for notices pursuant to

Bankruptcy Rule 2002.

## ARTICLE IX
## EFFECT OF CONFIRMATION, DISCHARGE, SURRENDER
## AND CANCELLATION OF CLAIMS

Section 9.01    **Entry of Confirmation Order.** Entry of a Confirmation Order shall

mean that any modifications or amendments to the Plan since the solicitation thereof are

approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional

disclosure or resolicitation under Bankruptcy Rule 3019

Section 9.02    **Substantive Consolidation.** Confirmation of the Plan shall result in the

consolidation of the Debtors for Plan and Plan distribution purposes only pursuant to section

105(a) of the Bankruptcy Code.

Section 9.03    **Binding Effect.** To the fullest extent provided in section 1141(5) of

the Bankruptcy Code, and subject to the occurrence of the Effective Date, on and after the

Confirmation Date, the provisions of this Plan shall bind any holder of a Claim against or

Interest in the Debtors and their successors and assigns, whether or not the Claim or Interest of

such holder is Impaired under this Plan and whether or not such holder has accepted the Plan,

and the Debtors shall receive a discharge as provided in such Section.

Section 9.04    **Vesting of Assets**. The Debtors, as the Reorganized Debtors, shall

continue to exist on and after the Effective Date as separate legal entities with all of the

powers available to such legal entities under applicable law, without prejudice to any right to

alter or terminate such existence (whether by merger or otherwise) in accordance with such

applicable law. Except as otherwise provided in the Plan, on the Effective Date, pursuant to sections

21

1141(b) and (c) of the Bankruptcy Code, all property of the Debtors' estates shall vest in the Reorganized Debtors or their assigns free and clear of all Claims, liens, encumbrances, and charges, and all other interests, including  assumed leases and executory contracts (including  all executory contracts and unexpired leases identified on Schedule A). On and after the Effective Date, the Reorganized Debtors and/or their assigns may operate their businesses and may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules in all respects as if there were no pending case under any chapter or provision of the Bankruptcy Code.

Section 9.05    **Discharge of Debtors**. Except to the extent otherwise provided in the Plan, the treatment of all Claims against or Interests in the Debtors under the Plan shall be in exchange for and in complete satisfaction, discharge and release of, all Claims against and Interests in the Debtors of any nature whatsoever, known or unknown, including any interest accrued or expenses incurred thereon from and after the Petition Date, or against the estates or properties or interests in property. Except as otherwise provided in the Plan, upon the Effective Date, all Claims against and Interests in the Debtors shall be deemed satisfied, discharged and released in full in exchange for the consideration provided under the Plan. Except as otherwise provided in the Plan, all entities shall be precluded from asserting against the Debtors, the Plan Funder, or Reorganized Debtors, or their respective properties or interests in property, any other Claims or Interests based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date**.**

Section 9.06    **Releases.**  The consideration distributed under the Plan shall be in exchange for and in complete satisfaction and release of all Claims against the Debtors, the Plan Funder, the Reorganized Debtors and any of the assets of their estates and the Plan Funder.

22

Section 9.07    **Exculpation**.  Neither the Debtors, the Reorganized Debtors, nor the Plan Funder, nor any of their respective members, shareholders, officers, directors, employees, attorneys, advisors, agents, representatives and assigns (the "Released Parties") shall have or incur any liability to any entity for any action taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, confirmation or consummation of the Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created or entered into, or any other action taken or omitted to be taken in connection with the chapter 11 cases or the Plan except with respect to the Debtors' obligations under the Plan, with the exception of any such act or omission taken in bad faith, willful misconduct, gross negligence, breach of fiduciary duty, malpractice, fraud, criminal conduct, unauthorized use of confidential information that causes damages, and/or ultra vires acts. Notwithstanding any other provision hereof, nothing contained in this section shall (a) effect a release of any claim by the United States Government or any of its agencies, including Internal Revenue Service ("IRS") or any state and local authority whatsoever, including New York State Department of Taxation and Finance ("NYSDTF") and including, without limitation, any claim arising under the Internal Revenue Code, ERISA, the environmental laws or any criminal laws of the United States or any state and local authority, including the New York State Tax Law, against the Debtors; nor shall anything in this section enjoin the United States or any federal governmental agency, including the IRS, or any state or local authority, including NYSDTF, from bringing any claim, suit, action or other proceedings against any Debtor for any liability whatever, including, without limitation, any claim, suit or action arising under the Internal Revenue Code, ERISA, the environmental laws or any criminal laws of the United States or any state and local authority, including the New York State Tax Law, nor shall anything in this Plan exculpate any Debtor from any liability to

23

the United States Government or any of its agencies, including the IRS, NYSDTF or any state

and local authority whatsoever, including liabilities arising under the Internal Revenue Code,

ERISA, the environmental laws or any criminal laws of the United States or any state and local

authority, including the New York State Tax Law, against the Debtors referred to herein, or (b)

limit the liability of the Debtors' professionals pursuant to Rule 1.8(h)(1) of the New York Rules

of Professional Conduct.

Section 9.08    Confirmation Injunction. Except as otherwise expressly provided in, or to

enforce, the Plan, any and all entities who have held, hold or may hold a Claim or Interest,

including Administrative Claims, against or in the Debtors shall, as of the Effective Date, be

enjoined from:(a) commencing, conducting, or continuing, in any manner, any suit, action, or

other proceeding of any kind (including, without limitation, in any judicial, arbitral,

administrative or other forum) against the Debtors, the Reorganized Debtors or the Plan Funder

with regard to such entity's Claim arising against any such party prior to the Effective Date;

*(b) enforcing, levying, attaching (including, without limitation, any pre-judgment attachment), collection or otherwise recovering by any manner or means, whether directly or indirectly, or any judgment, award, decree, or order against the Debtors, the Reorganized Debtors or the Plan Funder or their property with regard to such entity's Claim arising against any such party prior to the Effective Date;*

*(c) creating, perfecting or otherwise enforcing, in any manner, directly or indirectly, any encumbrance of any kind against the Debtors, the Reorganized Debtors or the Plan Funder, the property of the Debtors or Reorganized Debtors or the Plan Funder, or any successor-in-interest thereto or their property with regard to such entity's Claim arising against any such party prior to the Effective Date;*

24

*(d) asserting any set off or right of subrogation of any kind, directly or*

*indirectly, against any obligation due the Debtors, the Reorganized Debtors, the Plan Funder,*

*the property of such parties, or any successor-in-interest thereto or their property with regard*

*to such entity's Claim arising against any such party prior to the Effective Date; and*

*(e) acting in any manner, in any place whatsoever, that does not conform to or*

*comply with the provisions of the Plan.*

### ARTICLE X
### DISTRIBUTIONS AND UNCLAIMED PAYMENTS

Except as otherwise provided herein, if any claimant fails to claim any distribution hereunder within 120 days from the date of such distribution, such claimant shall forfeit all rights thereto, and to any and all future payments, and thereafter the Claim for which such Cash was distributed shall be treated as a disallowed Claim. Distributions to claimants entitled thereto shall be sent to their last known address set forth on a proof of claim filed with the Bankruptcy Court or, if no proof of claim is filed, on the Schedules filed by the Debtors or to such other address as may be later designated by such claimant in writing to the Debtors. The Debtors shall use their best efforts to obtain current addresses for all claimants. All unclaimed Cash hereunder shall be reallocated Pro Rata to Class 3 claimholders.

## EVENTS OF DEFAULT

Section 11.01  An "Event of Default" shall occur if the Debtors fail to make any payment when due under the Plan or fail to comply with any other material terms of the Plan, and written notice of same has been provided to the Debtors, Debtors' counsel and the Bankruptcy Court.

Section 11.02   Following an Event of Default, if such default has not been cured within ten (10) days thereafter, any holder of a Claim, payment of which is in default, shall have the right to (a) accelerate and demand payment due to such holder under the Plan, and/or (b) commence an action against the Debtors in the Bankruptcy Court or United States District Court to compel payment or otherwise to enforce the default.

Section 11.03  Provided that the Plan Distribution Fund has been released to the Debtors pursuant to the Plan, no Event of Default shall give rise to any claim against the Reorganized Debtors or the Plan Funder and the releases and injunctions in favor or such parties shall remain in full force and effect.

## ARTICLE XII
## RETENTION OF JURISDICTION

The Bankruptcy Court shall retain jurisdiction of the Chapter 11 cases:

a)      To determine all controversies relating to or concerning the allowance of and/ or distribution on account of Claims or Interests upon objection thereto, including the estimation of any Claim under section 502(c) of the Bankruptcy Code;

b)      To determine requests for payment of Administrative Claims, including any and all applications for compensation for professional fees and expenses;

c)      To determine any and all applications, adversary proceedings, and contested or litigated matters over which the Bankruptcy Court has subject matter

26

jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334;

      d)      To determine all disputed, contingent or unliquidated Claims;

      e)      To determine requests to modify the Plan pursuant to Section 1127 of the

Bankruptcy Code or to remedy any defect or omission or reconcile any inconsistencies in

this Plan or Confirmation Order to the extent authorized by the Bankruptcy Code;

      f)      To make such orders as are necessary or appropriate to carry out the

provisions of, and to enforce, the Plan;

      g)      To resolve controversies and disputes regarding the interpretation or

enforcement of the terms of the Plan;

      h)      (h) hear and determine any matters concerning the enforcement of the

provisions of Article 11 and 12 of this Plan and any other exculpations, limitations of

liability or injunctions contemplated by this Plan;

      i)      resolve any cases, controversies, suits or disputes that may arise in

connection with the consummation, interpretation or enforcement of the Plan, or the

Confirmation Order;

      j)      issue injunctions, enter and implement other orders or take such other

actions as may be necessary or appropriate to restrain interference by any

entity with consummation, implementation or enforcement of the Plan, or the

Confirmation Order;

      k)      enforce any injunctions entered in connection with or relating to the Plan

or the Confirmation Order;

      l)      enter and enforce such orders as are necessary or appropriate if the

Confirmation Order is for any reason modified, stayed, reversed, revoked or

vacated, or distributions pursuant to the Plan are enjoined or stayed;

m)      determine any other matters that may arise in connection with or relating to the Plan or any agreement entered into pursuant to the Plan or the Confirmation Order;

n)      enter any orders in aid of prior orders of the Bankruptcy Court;

o)      to hear any other matter not inconsistent with the Bankruptcy Code; and

p)      enter a final decree closing the Chapter 11 Cases.

*Signature Page Follows. Remainder of Page Intentionally Left Blank.*

28

Dated: White Plains, New York
November 17, 2016


IMAGIMED, LLC

By*: /s/*_____
    Scott Buchanan, CEO

OPEN MRI OF BREWSTER, LLC

By*: /s/*_____
    Scott Buchanan, CEO

OPEN MRI OF DEWITT LLC

By*: /s/*_____
    Scott Buchanan, CEO

OPEN MRI OF FISHKILL LLC

By*:/s/*_____
    Scott Buchanan, CEO

OPEN MRI OF MIDDLETOWN, LLC

By*: /s/*_____
    Scott Buchanan, CEO

OPEN MRI OF TARRYTOWN LLC

By*: /s/*_____
    Scott Buchanan, CEO

OPEN MRI OF WILLIAMSPORT LLC

By*: /s/*_____
    Scott Buchanan, CEO

OPEN MRI OF YORKTOWN LLC

By*: /s/*_____
    Scott Buchanan, CEO

Agreed and Consented to Article IV of the Plan
2020 ADVANCED DIAGNOSTIC IMAGING
LLC

By: /s/_____
    Scott Buchanan, Managing Member

30

**SCHEDULE A**

**SCHEDULE OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES
TO BE ASSUMED**

NONE

ALL OF THE DEBTORS' EXECUTORY CONTRACTS HAVE BEEN
PREVIOUSLY ASSUMED